**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VICTOR SANCHEZ, | : | PRISONER CASE NO. |
| Plaintiff, | : | 3:18-cv-1505 (JCH) |
| | : | |
| v. | : | |
| | : | |
| RN DEBBIE, et al., | : | |
| Defendants. | : | OCTOBER 25, 2018 |
| | : | |
| | : | |

**INITIAL REVIEW ORDER**

**I.      INTRODUCTION**

The plaintiff, Victor Sanchez ("Sanchez"), incarcerated at the MacDougall-Walker

Correctional Institution in Suffield, Connecticut, has filed a pro se Complaint ("Compl.")

(Doc. No. 1) under section 1983 of title 42 of the United States Code.  Sanchez sought

leave to proceed in forma pauperis.  See generally Motion for Leave to Proceed in

Forma Pauperis (Doc. No. 2).  On September 14, 2018, the court granted Sanchez's

application.  See generally Order (Doc. No. 6).

The Complaint names two defendants: RN Debbie and RN Angela.  Sanchez

contends that the defendants were deliberately indifferent to his serious medical needs

in violation of the Eighth Amendment.  See Compl. at 7, ¶ 23.

Under section 1915A of title 28 of the United States Code, the court must review

prisoner civil complaints and dismiss any portion of a complaint that is frivolous or

malicious, that fails to state a claim upon which relief may be granted, or that seeks

monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.

In reviewing a pro se complaint, the court must assume the truth of the allegations, and

interpret them liberally to "raise the strongest arguments [they] suggest[ ]."  Abbas v.

Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required,

a complaint must include sufficient facts to afford the defendants fair notice of the claims

and the grounds upon which they are based and to demonstrate a right to relief.  Bell

Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not

sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally

and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of

Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons,

470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02

(2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).  However,

notwithstanding this liberal interpretation, a pro se complaint will not avoid dismissal

unless the factual allegations meet the plausibility standard.  See, e.g., Fowlkes v.

Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015).

## II.      ALLEGATIONS

In April 2016, Sanchez was confined at Cheshire Correctional Institution.  See

Compl. at 6, ¶ 1.  He told RN Debbie that he was experiencing chest pains, heavy

breathing, sweating, headaches, stomach aches, and diarrhea.  Id.  He also complained

that he was coughing up mucus.  Id.  RN Debbie checked his blood pressure, heart

rate, and temperature.  Id. at 6, ¶ 2.  She refused Sanchez's request that she examine

his chest and lungs and refused to perform an EKG.[1]  Id. at 6, ¶ 3.  RN Debbie noted

that he had a fever, gave Sanchez Tylenol and allergy pills, and sent him back to his

housing unit.  Id. at 6, ¶¶ 4–5.

Sanchez's symptoms worsened over the next four days.[2]  Id. at 6, ¶ 6.  A custody

officer notified the medical unit.  Id. at 6, ¶ 7.  RN Angela called Sanchez to the medical

unit.  Id.  She checked his blood pressure, heart rate and temperature, and noted that

Sanchez had a temperature over 101 degrees.  Id. at 6, ¶¶ 8-9.  RN Angela did not

perform an EKG and refused Sanchez's request to examine his chest and lungs.  Id. at

6, ¶ 10.  Although noting that Sanchez had previously been seen for these complaints

and that his condition had worsened, RN Angela did not call the on-call doctor.  Id. at 6,

¶¶ 11–12.  Instead, she stated that she would have Sanchez seen by a doctor the

following day and sent him back to his housing unit.  Id. at 6, ¶¶ 13–14.

Sanchez did not see a doctor the next day.  Id. at 7, ¶ 15.  He informed first and

second shift custody officers that his condition was worsening, but he was provided no

help.  Id. at 7, ¶ 16.  A third shift officer called the medical unit for Sanchez.  Id. at 7, ¶

17.  Medical staff had Sanchez taken to the medical unit by wheelchair, and the on-call

---

[1] The sick call report of this visit indicates, however, that Sanchez's lungs were clear with no
wheezing.  See Compl. at 14.

[2] The sick call reports attached to the Complaint show that Sanchez was first seen at sick call at
9:00 a.m. on April 12, 2016.  The second visit was the evening of the following day, 8:30 p.m. on April 13,
2016, not four days later as alleged.  See Compl. at 14–15.

doctor directed that he be taken to the hospital.  Id. at 7, ¶¶ 18-21.  Hospital staff

diagnosed Sanchez with pneumonia.[3]  Id. at 7, ¶ 22.

## III.    ANALYSIS

The Supreme Court has held that deliberate indifference to a convicted prisoner's

serious medical needs can constitute cruel and unusual punishment in violation of the

Eighth Amendment.[4]  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A claim of

deliberate indifference to serious medical needs contains both an objective and a

subjective component.  See Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

Under the objective component of the test, the alleged deprivation of medical care must

be "sufficiently serious."  See id. at 279 (quoting Farmer v. Brennan, 511 U.S. 825, 834

(1994)).  This inquiry "requires the court to examine how the offending conduct is

inadequate and what harm, if any, the inadequacy has caused or will likely cause the

prisoner."  Id.  A "sufficiently serious" deprivation can exist if the plaintiff suffers from an

urgent medical condition that is capable of causing death, degeneration, or extreme or

---

[3] Although Sanchez alleges that he was diagnosed with chronic pneumonia, he has attached to his Complaint a letter indicating that additional testing showed that the pneumonia was not chronic.  See Compl. at 32.

[4] It is not clear from the Complaint whether Sanchez was a convicted inmate or a pretrial detainee at the time of the alleged unconstitutional conduct by RN Debbie and RN Angela.  However, because Sanchez's confinement status is available publicly on the DOC website, the court takes judicial notice of the fact that Sanchez was sentenced on May 17, 2002.  See Connecticut State Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/searchop.asp; see also Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (noting that courts may "take judicial notice of relevant matters of public record"); Ruffins v. Dep't of Corr. Servs., 907 F. Supp. 2d 290, 293 n.4 (E.D.N.Y. 2012) (taking judicial notice of the plaintiff's underlying state court sentence, as well as "the administrative documentation of plaintiff's custody and release from DOCS.").  Thus, as Sanchez was a sentenced inmate at all times relevant to this Complaint, the court analyzes his claims under the Eighth Amendment standard for sentenced prisoners, rather than the Fourteenth Amendment standard for pretrial detainees.  See Walker v. Wright, No. 3:17-CV-425 (JCH), 2018 WL 2225009, at *3 (D. Conn. May 15, 2018) ("Rights of pretrial detainees are considered under the Fourteenth Amendment, while rights of sentenced prisoners are considered under the Eighth Amendment.") (citing Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)).

chronic pain.  See Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir. 2003); Hathaway v.

Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  A medical condition may not initially be

serious, but may become serious because it is degenerative and, if left untreated or

neglected for a long period of time, will "result in further significant injury or the

unnecessary and wanton infliction of pain."  Harrison v. Barkley, 219 F.3d 132, 136–37

(2d Cir. 2000).  The Second Circuit has identified several factors that are "highly

relevant" to the question of whether a medical condition is sufficiently serious, including

"an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an

individual's daily activities; or the existence of chronic and substantial pain."  Chance v.

Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

Where, as here, the plaintiff complains about a delay in treatment, the court

should consider the effect of the delay on the underlying medical condition.  The

Second Circuit has held that a delay in treatment constitutes deliberate indifference

where prison officials ignored a "life-threatening and fast-degenerating" condition for

three days, Liscio v. Warren, 901 F.2d 274, 277 (2d Cir. 1990), or delayed needed

major surgery for over two years, Hathaway v. Coughlin, 841 F.2d 48, 50-51 (2d Cir.

1988).  The court considers the reason for the delay and whether the delay worsened

the prisoner's condition.  Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).  "[I]n

most cases, the actual medical consequences that flow from the alleged denial of care

will be highly relevant to the question of whether the denial of treatment subjected the

prisoner to a significant risk of serious harm."  Id. at 187 (citations omitted).

The subjective component requires that the defendant prison official must have "acted with a sufficiently culpable state of mind." Id. at 184 (quoting Hathaway, 99 F.3d at 553). This does not require "knowing and purposeful infliction of harm," but "suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." See Salahuddin, 467 F.3d at 280. Thus, the defendant must have been "actually aware of a substantial risk that serious inmate harm would result" as a result of his or her actions or inactions and have disregarded that risk. See id. The fact that a prison official "fail[ed] to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. See Farmer, 511 U.S. at 838.

A showing of negligence or medical malpractice does not support an Eighth Amendment claim, unless it involves culpable recklessness. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation." See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). In certain situations, however, "instances of medical malpractice may rise to the level of deliberate indifference[,] namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." Hathaway, 99 F.3d at 553 (internal quotation marks and citation omitted).

RN Debbie saw Sanchez one time for flu-like symptoms. The facts do not support a serious medical need. RN Debbie examined him and prescribed some medication. The fact that her examination may not have been as thorough as Sanchez may have liked, constitutes, at most, negligence. The allegations against RN Debbie do

6

not support a plausible claim for deliberate indifference to a serious medical need.  See

Darnell v. Pineiro, 849 F.3d 17, 33 (2d Cir. 2017) (noting that "an official's failure to

alleviate a significant risk that he should have perceived but did not, while no cause for

commendation," does not constitute an Eighth Amendment violation) (quoting Farmer,

511 U.S. at 838 (quotation marks omitted)).  The claim against RN Debbie is dismissed

pursuant to section 1915A(b)(1).  See, e.g., Walker v. Kubicz, 996 F. Supp. 336, 341

(S.D.N.Y. 1998) (dismissing Eighth Amendment claim for failure to treat and diagnose

prisoner's pneumonia because prison doctors prescribed prisoner a preliminary course

of treatment and, once becoming aware of the seriousness of prisoner's symptoms,

promptly sought emergency care).

Sanchez alleges that RN Angela was aware of his worsening symptoms when

she saw him the following evening.  Instead of consulting a doctor immediately, RN

Angela said she would have Sanchez seen by a doctor the following day but did not do

so.  Sanchez was sent to the hospital about thirty-one hours after he saw RN Angela

and returned to the correctional facility the same morning.[5]  This claim appears to be for

a delay in treatment.

As explained above, to prevail on a claim based on a delay in treatment,

Sanchez must plausibly allege that the delay caused him harm.  See Smith, 316 F.3d at

186 (short delay in care, even if serious medical condition, not a serious medical need if

---

[5] The sick call reports attached to the Complaint show that Sanchez was seen with a temperature of 101.9 degrees on April 13, 2016, at 8:30 p.m.  Compl. at 15.  Sanchez alleges that he had a fever of 101º when he saw RN Angela.  Id. at 6, ¶ 11.  The next sick call report is dated April 15, 2016, at 3:25 a.m.  Id. at 16.  This is consistent with Sanchez's allegation that he was brought to the medical unit on third shift and sent to the hospital.  Id. at 7, ¶ 17.  The last sick call report is dated April 15, 2016, at 11:05 a.m., and notes that Sanchez was seen on his return from the emergency room.  Id. at 17.

"the alleged lapses in treatment are minor and inconsequential'). Sanchez alleges no facts suggesting that the delay of about one and one-half days caused him any harm. Thus, he fails to allege facts to support a plausible claim against RN Angela. See, e.g., Walker v. Kubicz, 996 F. Supp. 336, 341 (S.D.N.Y.1998) (prison doctors failure to treat and diagnose prisoner's pneumonia was not deliberate indifference: plaintiff's treatment was delayed by only one day and he was given emergency care once aware his symptoms were serious); see also, e.g., Farid v. Ellen, No. 01 Civ. 8292(PKC), 2006 WL 59517, at *10-11 (S.D.N.Y. Jan. 11, 2006) (granting summary judgment because "plaintiff has come forward with no evidence of how this alleged delay exacerbated his condition or worsened his prognosis for effective treatment"), aff'd in part and vacated in part on other grounds, 593 F.3d 233 (2d Cir. 2010); Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D.N.C. 2005) (one and one-half day delay between prisoner's first complaints of flu-like symptoms and treatment and diagnosis of pneumonia not deliberate indifference). The claim against RN Angela is dismissed without prejudice pursuant to section 1915A(b)(1). Sanchez may amend his claim against her if he can allege facts plausibly showing that the delay worsened his medical condition.

## ORDERS

(1)     The Complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The claim against RN Angela is **DISMISSED** without prejudice.  Sanchez may file a Motion to Reopen accompanied by a proposed amended complaint, provided he can allege facts showing that the delay in treatment worsened his condition or interfered with proper treatment of his pneumonia.

(2)     The Clerk is directed to enter judgment and close this case.

(3)     Any Motion to Reopen and proposed amended complaint shall be filed

within thirty days from the date of this Order.

**SO ORDERED.**

Dated this 25th day of October 2018 at New Haven, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge